S05A0913. ROS v. THE STATE.
S05A0935. TRAN v. THE STATE.
(619 SE2d 644)

HUNSTEIN, Presiding Justice.

Vandara Ros and Albert Kim Tran were indicted along with Rheakdsy Mike Yat on murder and other charges arising out of the shooting death of Hieu Tran. Ros and Tran (no relation to the victim) were tried together; Ros was found guilty of malice murder and Tran was found guilty of felony murder.[1] We have consolidated their appeals in this opinion. Because we find the evidence was sufficient to support their convictions and no merit in the remaining errors, we affirm.

Evidence at trial established that appellants were members of a gang called "Asian Gangster Crips" ("AGC"). On January 9, 2000, as appellant Ros dined at a Gwinnett County restaurant, he spotted rival gang members at another table. One of them, nicknamed "Fat John," had recently been released from prison after serving time for his aggravated assault of Ros. Dining with Fat John were the victim, a college student not affiliated with any gang, and the victim's two brothers, who were with a rival gang. Appellant Ros telephoned other AGC members and instructed them to get their guns and come to the restaurant. Appellant Tran, co-indictee Yat and other AGC members responded. After appellant Ros exited the restaurant, he united with his fellow gang members and together they waited until the victim and the rival gang members left the restaurant to ambush them in the parking lot. Appellant Ros rushed the victim, who knocked Ros to

---

[1] The crimes occurred January 9, 2000. Yat, Ros and Tran were indicted March 31, 2000 in Gwinnett County on charges of malice murder, felony murder and possession of a firearm during commission of a felony. Co-indictee Yat was tried separately and we affirmed his conviction for felony murder in Yat v. State, 279 Ga. 611 (619 SE2d 637) (2005). Ros was convicted of malice murder and the firearm possession charge; Tran was convicted of felony murder and the firearm possession charge. Both men's verdicts were filed July 17, 2002 and they were both sentenced that same day to life imprisonment with a consecutive five-year probated sentence for the firearm possession charge. Ros's motion for new trial, filed August 8, 2002 and subsequently amended, was denied October 19, 2004; his notice of appeal was filed November 18, 2004; and his appeal was docketed February 17, 2005. Tran's motion for new trial, filed July 31, 2002, was denied October 19, 2004; his notice of appeal was filed October 28, 2004; and his appeal was docketed February 23, 2005. Ros's appeal was submitted for decision on the briefs; Tran's appeal was orally argued May 9, 2005.

the ground. Ros drew a .9 millimeter handgun (which had been brought to him by another gang member) and fired the weapon twice but did not hit anyone. Before he could fire again, the weapon jammed and Ros then fled the scene.

Despite Ros's departure, appellant Tran and the other AGC gang members continued the attack on the victim. Armed with a souvenir baseball bat, Tran repeatedly struck the victim in the head and body until the bat cracked. His attack left the victim sprawled on the sidewalk. Although Tran had a handgun in his possession, it was co-indictee Yat who shot the victim twice in the back with a .38 caliber pistol, inflicting the victim's fatal injuries. The entire incident, from start to finish, lasted only a few minutes.

### Case No. S05A0913

1. Appellant Ros contends the evidence was insufficient to sustain his conviction for malice murder. We disagree. Construing the evidence to support the verdict, the jury was authorized to conclude that in retaliation for Fat John's aggravated assault, Ros purposefully instigated an organized gang attack of the rival gang members at the restaurant; that although the victim was not a member of any gang, he was targeted with the others who had dined with Fat John; that in obedience to Ros's direct order, appellant Tran and other AGC gang members brought firearms and provided Ros with a firearm; that despite the victim's lack of any gang affiliation, Ros deliberately sought out and attacked the victim in the parking lot as the first person the gang ambushed; and that although Ros left the scene before Yat shot the victim, he was criminally responsible for the fatal injuries. OCGA § 16-2-20. See *Rouse v. State*, 275 Ga. 605 (1) (571 SE2d 353) (2002); *Cox v. State*, 242 Ga. App. 334 (4) (528 SE2d 871) (2000). The evidence adduced was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Ros was guilty of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After errors were discovered in the polling portion of the certified trial transcript as to the identity of the jurors who were impaneled to hear the trial and jurors' answers when polled, the court reporter re-transcribed that portion of the proceedings and filed the corrected version with the court. A hearing was thereafter held at which time the tape of the trial was played. The trial court determined that the corrected version accurately reflected the tape's contents and ordered that the corrected version be substituted for the original version. The corrected transcript disclosed that no potential jurors struck during voir dire were improperly seated with the jurors

selected to hear the trial and that no problems existed regarding the jurors' answers during the polling. Ros concedes that the corrected transcript accurately reflects what the tapes showed occurred at trial, but asserts this case must be remanded with an order that another court reporter transcribe it at county expense in order to remove from the transcript any ambiguity regarding what the court reporter transcribed. However, Ros has not shown that the court reporter was incapable of transcribing the tapes so as to require the appointment of another court reporter. Compare *Wilson v. State*, 246 Ga. 672 (273 SE2d 9) (1980). Moreover, in regard to the corrected transcript, Ros "fails to show how he was harmed or to raise any issue which this Court is unable to adequately review because of skips in the record." *Smith v. State*, 251 Ga. 229, 230 (2) (304 SE2d 716) (1983). Accordingly, we find no error in this enumeration.

### Case No. S05A0935

3. The evidence adduced at trial was sufficient to authorize the jury to find beyond a reasonable doubt that appellant Tran participated in the group attack on the victim and rival gang members while in possession of a firearm and that Tran intentionally aided or abetted Yat in the commission of the felony murder. Accordingly, the evidence amply supported Tran's conviction of felony murder as a party to the crime and his conviction of possession of a firearm during the commission of a felony under the standard set forth in *Jackson v. Virginia*, supra.

4. We have reviewed the voir dire testimony of potential juror McDermott, which reflects that she had not formed an opinion on the guilt or innocence of appellant that was so fixed and definite that she would be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. See *McClain v. State*, 267 Ga. 378 (1) (a) (477 SE2d 814) (1996). Thus, there is no merit in Tran's contention that the trial court engaged in an improper "rehabilitation" of the juror or otherwise abused its discretion in the manner in which voir dire was conducted. See *Pitts v. State*, 260 Ga. App. 553 (5) (b) (580 SE2d 618) (2003) (trial court does not abuse discretion by inquiring into juror's ability to be fair and impartial but may not rely on insufficient rehabilitative questions to reject clear evidence of potential juror's bias). Accord *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002) (rehabilitating potential jurors in civil case). Compare *Ivey v. State*, 258 Ga. App. 587 (2) (574 SE2d 663) (2002).

5. Tran contends the trial court's charge on aggravated assault to the jury was vague and misleading because by charging the jury with the language of OCGA § 16-5-21 (a) (2) (person commits aggravated

assault when he assaults "with a deadly weapon") rather than with the language in the indictment (that the aggravated assault was committed "by shooting [the victim] with a firearm"), the trial court authorized the jury to convict Tran of felony murder based on his unindicted aggravated assault of the victim with the souvenir baseball bat. We find no merit in this contention. The evidence adduced at trial established uncontrovertedly that the injuries Tran inflicted on the victim with the bat did not cause or contribute in any manner to the victim's death. In its instructions, the trial court charged the jury on the connection it was required to find between the felony and the homicide in order to convict Tran of felony murder.[2] The trial court also charged the jury with the language of the indictment, specifically, that the aggravated assault was committed "by shooting [the victim] with a firearm," and instructed them they were required to find beyond a reasonable doubt that Tran committed the felony murder "as charged" in order to convict him. " '[A] complete review of the trial court's charge shows that it was neither confusing nor misleading and that it provided full and fair instruction on the issues in the case.' " *Farrier v. State*, 273 Ga. 302, 303 (2) (540 SE2d 596) (2001).

6. Tran contends he received ineffective assistance of trial counsel, asserting interrelated arguments involving counsel's decision to request a charge on aggravated assault as a lesser included offense of malice murder rather than request charges on voluntary manslaughter and unlawful act involuntary manslaughter. To prevail on his claim Tran was required to show both that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Harris v. State*, 279 Ga. 522 (6) (615 SE2d 532) (2005). We need not address Tran's contention that counsel's performance was deficient in regard to requesting an aggravated assault charge because he has

---

[2] The trial court's charge tracked the language in Part 4 (B) (4) of the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, second edition (as revised at the time of the July 2002 trial), including the instruction that

[i]n order for a homicide to have been done in the commission of [the charged aggravated assault], there must be some connection between the felony and the homicide. The homicide must have been done in carrying out the unlawful act and not collateral to it. It is not enough that the homicide occurred soon, or presently, after the felony was attempted or committed. (There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at an end or before any attempt to avoid conviction or arrest for the felony.) The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be a part of it in an actual and material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

failed to show how that requested charge prejudiced him. Tran's argument is that counsel, by asking for the aggravated assault charge, "eliminated the possibility" of the jury convicting Tran on voluntary or felony involuntary manslaughter, into which the felony murder conviction would have merged. However, there was no evidence to support a charge on voluntary manslaughter. Given the uncontroverted testimony that the victim did nothing to provoke the attack by the AGC gang members and had no mutual intention to fight, Tran cannot rely upon the victim's behavior in defending himself from the unprovoked attack as establishing the evidence of passion or provocation needed to authorize a charge on voluntary manslaughter. *Mathis v. State*, 196 Ga. 288 (1) (26 SE2d 606) (1943). Likewise, given that the evidence established that the victim's death was the result of a felony, i.e., aggravated assault with a deadly weapon, Tran was not entitled to a charge on unlawful act involuntary manslaughter. OCGA § 16-5-3 (a); see *Brooks v. State*, 262 Ga. 187 (3) (415 SE2d 903) (1992). Accordingly, Tran was not prejudiced by counsel's decision to request a charge only on aggravated assault and not on voluntary or involuntary manslaughter.

7. Contrary to Tran's contention, it did not take 16 months for the court reporter to file the transcript with the clerk.[3] Of the seven errors in the transcript to which Tran points, one was explained by the court reporter, see footnote 3, supra; five involve instances of jumbled, misplaced or repeated language that did not impair this Court's ability to adequately review Tran's enumerated errors, see *Smith v. State*, supra, 251 Ga. at 230 (2); and the final error, involving the polling of the jury, was resolved adversely to Tran in Division 2, supra. The record thus does not support Tran's contention that errors in the trial transcript deprived him of due process of law.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 19, 2005.

*Michael S. Marr*, for appellant (case no. S05A0913).
*Wystan B. Getz*, for appellant (case no. S05A0935).

---

[3] The court reporter testified at the hearing on the motion for new trial that he certified the transcript on September 29, 2003 and delivered it November 5 of that same year, attributing the few weeks' delay to getting the transcript printed in sufficient numbers and putting it together.

*Daniel J. Porter, District Attorney, Thomas N. Davis, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.